**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| ROOFERS LOCAL NO. 20 ) | |
| HEALTH AND WELFARE FUND, ) | |
|     Plaintiff/Third-Party Plaintiff, ) | |
| v. ) | No. 05-1206-CV-W-FJG |
| ) | |
| MEMORIAL HERMANN HOSPITAL ) | |
| SYSTEM, et al., ) | |
|     Defendants, ) | |
| v. ) | |
| FMH BENEFIT SERVICES, INC., ) | |
|     Third-Party Defendant. ) | |

## ORDER

Pending before the Court are (1) Plaintiff's Motion for Summary Judgment on Counterclaim of Defendants Memorial Hermann Hospital System and Hermann Continuing Care Hospital (Doc. No. 63); (2) Third-Party Defendant's Motion for Summary Judgment Against Plaintiff/Third-Party Plaintiff (Doc. No. 55); (3) Third-Party Defendant's Objections to and Motion to Strike Defendants' Witnesses (Doc. No. 89); (4) Third-Party Defendant's Objections to and Motion to Strike Plaintiff's Witnesses (Doc. No. 90); (5) Defendants' Motion to Continue (Doc. No. 93); and (6) Defendants' Motion for Extension of Time to File Response to Plaintiff's Motion for Summary Judgment (Doc. No. 106). Each will be considered below.

**I.     Background**

As stated by third-party defendant FMH, "The Fund [plaintiff] filed this declaratory judgment action against Defendants alleging that it properly denied a claim for medical benefits arising out of injuries sustained by Defendant Kevin Sullins ("Sullins") and, therefore, the Fund owes no benefits under its self-funded plan. In response, Defendants Memorial Hermann Hospital System and Memorial Hermann Continuing Care Hospital (the "Hospitals") denied the Fund's allegations and filed a counterclaim against the Fund

contending that its third-party administrator verified and precertified insurance for Sullins, which [somehow] constitutes negligence, negligent misrepresentations, and violations of the Texas Insurance Code. In response, the Fund denied the allegations in the Hospitals' counterclaim, and filed a third-party complaint against FMH for indemnity, contending that, if any misrepresentations were made to the Hospitals, they were made by FMH, not the Fund." Doc. No. 56, pp. 1-2.

**II.     Plaintiff's Motion for Summary Judgment on the Counterclaim of Defendants Memorial Hermann Hospital System and Memorial Hermann Continuing Care Hospital (Doc. No. 63) and Defendants' Motion for Extension of Time to File Response (Doc. No. 106)**

As a preliminary matter, the Court will **GRANT** defendants' motion for extension of time to file their response; defendants' response, filed on March 30, 2007, will be treated as timely filed.

Plaintiff moves for summary judgment on the counterclaims of Memorial Hermann Hospital System and Memorial Hermann Continuing Care Hospital. Count I of the counterclaim (Doc. No. 6) is entitled "Insurance Code Violations" and alleges violations of Texas Insurance Code Article 21.21, §§ 4 and 16, and Tex. Business and Commerce Code § 17.46. Count Two is entitled "Negligence and Negligent Misrepresentation." Plaintiff/counterclaim defendant states that the deposition testimony of defendants' representatives, coupled with the documents produced, demonstrates that no misrepresentations were made to either of the two defendants.

**A.     Facts**[1]

---

[1] Plaintiff states that, due to the identity of interest between it and FMH, it adopts much of FMH's statement of material facts (found in Doc. No. 56) as its own. Thus, the great majority of the facts stated in the Court's Order are taken directly from FMH's statement of facts found in its suggestions in support of its motion for summary judgment (Doc. No. 56).

Further, and notably, defendants in their response do not specifically controvert in separately numbered paragraphs any of plaintiff's or FMH's facts as required by Local

2

The Fund is a trust that created a self-funded employee benefit plan (the "Plan") for its members, and the Plan is a product of the Trust.  The Fund is governed by six trustees, who are union and participating employer representatives, whose responsibilities are to assure the Plan is properly administered.  Union members and employees of participating employers of the Fund are eligible for coverage under the Plan.  The Fund is "self-funded," meaning it is funded by the participating employers of the Fund, their members, and any Fund investments.  The Fund pays medical benefits for its members that fall within the terms of the Plan.  Once eligible to participate under the Plan, the terms and conditions of the Plan must be met before benefits are payable.  If benefits are payable under the Plan, they are payable by the Fund, and the money used to pay the benefits are monies of the Fund.  The trustees of the Fund have the ultimate authority to make final claims determinations for the Plan.

The Fund retained FMH to provide certain administrative services for the Plan.  The Fund and FMH have no common employees, and no one from FMH ever served as a trustee of the Fund.  The Fund does not pay or contribute to the funding of the Plan, had no involvement in designing the Plan, and had no involvement in the election or appointment process of the trustees of the Fund.  FMH has no authority to make final claims determinations for the Plan.  An administration agreement between the Fund and FMH (the "Administration Agreement") sets forth the services to be performed by FMH.  In particular, FMH had authority to verify insurance and conduct pre-certifications with medical providers.

"Insurance verification" means determining whether a participant is "eligible" under

---

Rule 56.1(a).  Local Rule 56.1(a) provides, "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party."  See Ruby v. Springfield R-12 Public School District, 76 F.3d 909, 911 n. 6 (8th Cir. 1996).  Consequently, the facts stated below are derived from plaintiff's and FMH's statements of facts, unless otherwise indicated.

the Plan, not whether benefits are payable. Insurance verifications are subject to the terms and conditions of the Plan. "Precertification" means determining the length of stay based on medical necessity subject to the terms and conditions of the Plan. Precertification typically takes place <u>before</u> the hospital admission, the medical expenses are incurred, and a claim determination is made, and is not a guarantee of benefits or a claim determination.

The Administration Agreement also provides that "FMH shall not be liable to use its funds for the payment of benefits under the Plan," "FMH shall not be considered the insurer or underwriter of the liability of [the Fund] to provide benefits for covered persons under the Plan," and "[the Fund] shall have the final responsibility and liability for payment of claims in accordance with the provisions of the Plan."

Sullins was a member and participant under the Plan when he incurred the medical expenses that are the subject of this lawsuit, and Sullins was eligible for benefits under the Plan subject to the terms and conditions thereof. On December 16, 2004, Sullins was injured. On that date, Sullins was a participant under the Plan and eligible for benefits thereunder, subject to the terms and conditions of the Plan. As a result of his injuries, Sullins incurred medical expenses at the Hospitals, which are the subject of the lawsuit.

The Plan contains an exclusion for benefits if injured while committing or attempting to commit a felony (the "Felony Exclusion"). For example, if a participant is eligible for coverage under the Plan, but his injuries are incurred during the commission of a felony, no benefits would be payable under the Plan. The applicability of the Felony Exclusion cannot be determined, though, until a claim is filed, processed, investigated and reviewed.

On April 6, 2005, the trustees of the Fund made the determination denying Sullins' claim under the Plan based upon the Felony Exclusion and notified FMH thereafter of the claim decision. By letter dated April 19, 2005, plaintiff notified defendant Sullins that his claim for medical benefits had been denied. The letter was received by Mr. Sullins within a few days of its date. FMH did not participate in the decision to deny Sullins' claim, and
4

the trustees of the Fund did not confer with FMH on the claim. Prior to the Fund denying the claim, FMH was authorized to perform its administrative services under the Plan and inform the Hospitals that any payment of benefits would be subject to the terms and conditions of the Plan.

The Fund sued the Hospitals because they were seeking payment of benefits under the Plan, so the Fund decided to file a declaratory action that no benefits were payable. When the Hospitals filed a counterclaim that the Fund's administrator allegedly guaranteed coverage, the Fund then instituted a third-party complaint against FMH. The Hospitals' counterclaim alleges that they verified insurance with "Freedom Network," not FMH, but such companies are different entities with different written agreements with the Fund.

Gloria Copeland Jones ("Jones") is the employee of, and insurance verifier for, the Hospitals who verified insurance for Sullins. Jones' primary job duty is to verify insurance, meaning she calls insurance companies to find out what benefits are available under insurance policies for particular patients. Jones verified insurance for Sullins on December 17, 2007, the day after he was admitted to the Hospitals. Jones has no recollection of the insurance verification call, except for her notes on the insurance verification form. The only questions Jones asks when verifying insurance are those set forth on the insurance verification form, but the Hospitals do not rely on the information received when verifying insurance. Prior to making the insurance verification call, Jones never (i) asked Sullins or anyone else for a copy of the Plan; (ii) interviewed Sullins; (iii) asked for any details from the emergency room department surrounding Sullins' stabbing; (iv) reviewed the Hospitals' emergency room records or any other medical records for that matter to learn what happened to Sullins that led to his hospitalization; (v) had any conversations with the treating physician or primary nurse of Sullins; or (vi) interviewed anyone, including law enforcement officials, to learn of the underlying facts that led to Sullins' injuries.

Jones' insurance verification for Sullins consisted of one telephone call, and she

5

verified insurance with "Kim". It is common for insurance companies and plans to give disclaimers that insurance verifications do not constitute a guarantee of benefits, which is why Jones does not note disclaimers on her insurance verification form. Jones knows, when verifying insurance, that any verification given to her is not a guarantee of payment, and the payment of benefits is subject to the terms and conditions of the underlying insurance policy. The only information Jones had on Sullins' injury when she verified insurance, and the only information she provided to Kim, was that "there was a stabbing to the chest." Kim didn't know how Sullins obtained his stab wounds, and Jones had no expectation when she verified insurance that Kim knew the history of the injury. During her insurance verification call regarding Sullins, Jones did not (i) know if the stabbing was self-inflicted, or whether it even involved a knife; (ii) know if Sullins was in the commission of a felony when stabbed; (iii) know if Sullins was the instigator in the incident that led to his stabbing; (iv) request a copy of the Plan; (v) ask for a list of every Plan exclusion; or (vi) ask whether the Plan even contained a felony exclusion or workers' compensation exclusion.

Jones verifies insurance on 20-25 accounts per day, and there is nothing Jones recalls about the insurance verification of Sullins that is not written down on the insurance verification form. Jones has no evidence that Kim gave her incorrect information. When verifying insurance for Sulins, Jones had no expectation that benefits would be paid under the Plan. Neither FMH nor the Fund assumed financial responsibility for Sullins' medical expenses, and Jones never asked them to when verifying insurance because she knew they must first review and investigate the claim and medical expenses to determine if they are payable under the Plan.

Jones did not talk with any trustee of the Fund or the Fund administrator and no representations were made by the Fund, its trustees or administrators upon which Jones relied. No one from Memorial Hermann or Continuing Care consulted with Jones before filing the Counterclaim. Although the policy of Memorial Hermann suggested that Ms.

Jones inform FMH that the hospital was relying upon information received from FMH, Ms. Jones did not convey that to FMH.

Elissa Shelton ("Shelton") is an utilization review specialist for one of the Hospitals and seeks pre-authorizations from insurance companies for hospital lengths of stay based on medical necessity. When seeking pre-authorizations, Shelton <u>knows</u> (i) the medical treatment and expenses have not yet been incurred or submitted for payment, (ii) the payment of benefits is subject to the terms and conditions of the patient's insurance policy, and (iii) the authorizations she receives are not guarantees of payment. Shelton had two conversations with FMH (January 25, 2005 and February 9, 2005), but recalls little, except that FMH made no false, misleading or untrue statements, did not mislead her to believe benefits would be paid or liability would be assumed for Sullins' claims, and informed her that the payment of benefits would be subject to the terms of the Plan. Shelton did not talk with the trustees or administrator of the Fund and did not rely upon any representations made by them. Shelton was not consulted by anyone from Memorial Hermann or Continuing Care before they filed the Counterclaim.

Debra Robertson ("Robertson") is employed by one of the Hospitals in the collection department and was responsible for the collection of Sullins' account. Robertson's involvement began on February 1, 2005, <u>after</u> the medical services were rendered, a bill was submitted for payment, and Sullins was discharged from the Hospital. FMH first received notice of Sullins' benefit claim from the Hospitals on February 2, 2005, and Robertson's involvement was limited to follow-up calls with FMH on the collection of the outstanding charges. From that day, through Robertson's last contact with FMH on March 21, 2005, Robertson was aware, through her collection calls to FMH, that the Plan had not yet made a claim determination on whether benefits were payable. Robertson never received anything in writing from the Plan or FMH that the claim was payable, and Robertson has no evidence, facts or information, that FMH made any false, misleading or

untrue statements. Robertson did not talk with any trustee or administrator of the Fund and did not rely upon any statement made by them. No one from Memorial Hermann or Continuing Care consulted with Robertson before filing the Counterclaim. Memorial Hermann rendered all of its medical services before the account was transferred to Robertson.

No employees of either of the Hospital Defendants contacted Roofers concerning the existence or extent of insurance coverage available to Defendant Sullins prior to and at the time medical services were being provided to him. All representations concerning the existence or extent of insurance coverage available to Defendant Sullins prior to and at the time medical services were being provided to him were made by Freedom Network or FMH and not by Roofers.

**B.    Argument**

Defendants' counterclaims are for (1) "Insurance Code Violations," alleging violations of Texas Insurance Code Article 21.21, §§ 4 and 16, and Tex. Business and Commerce Code § 17.46; and (2) "Negligence and Negligent Misrepresentation."

Texas Insurance Code Article 21.21 § 4 provides:

> Unfair Methods of Competition and Unfair or Deceptive Acts or Practices Defined
>
> Sec. 4. The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
>
> (1) Misrepresentations and False Advertising of Policy Contracts. Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby . . . .
>
> (2) False Information and Advertising Generally. . . . [C]ausing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper,

8

magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading;

\*\*\*

(11) Misrepresentation of Insurance Policy. Misrepresenting an insurance policy by:

> (a) making an untrue statement of material fact;
>
> (b) failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (c) making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of a material fact;
>
> (d) making a material misstatement of law; or
>
> (e) failing to disclose any matter required by law to be disclosed, including a failure to make disclosure in accordance with another provision of this code.

Texas Insurance Code Article 21.21 § 16 provides:

> Sec. 16. (a) Any person who has sustained actual damages caused by another's engaging in an act or practice declared in Section 4 of this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice specifically enumerated in a subdivision of Section 17.46(b), Business & Commerce Code**, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices. To maintain an action for a deceptive act or practice enumerated in** Section 17.46(b), Business & Commerce Code**, a person must show that the person has relied on the act or practice to the person's detriment.**

9

Thus, Texas Business and Commerce Code § 17.46 cannot provide a claim to defendants unless defendants can demonstrate <u>reliance</u> on the acts of plaintiff or FMH. Further, all the above sections require a <u>misrepresentation</u> or <u>false statement</u> in order for defendants to state a claim.

The elements of a negligent misrepresentation claim under Texas law are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. <u>Miller v. Raytheon Aircraft Co.</u>, ___ S.W.3d ___, 2007 WL 1166161, *16 (Tex. App. Houston, April 19, 2007).

Plaintiff states that all of the evidence cited in the statement of facts (above) indicates that there was no misleading communication from either FMH or plaintiff, and that defendants have not demonstrated any reliance on the communications since all care was rendered and bills incurred during a time when the defendants' representatives knew there had been no determination made by the Fund as to whether benefits were payable. Thus, plaintiff states that defendants cannot demonstrate that any questions of material fact remain as to their counterclaims, and summary judgment must be granted.

In response, the defendants/counterclaimants make many arguments that do not relate to their counterclaims at all. Defendants spend approximately ten pages of their twenty-one page response brief discussing how their ERISA claims should survive summary judgment, even though no ERISA claims were pled in defendants'

10

counterclaim.[2]  Defendants also argue that there are questions of fact as to whether plaintiff and/or FMH violated certain sections of the Texas Insurance Code. However, in making this argument, defendants invoke sections of the Texas Insurance Code (§§ 843.347, 1301.133, 28 T.A.C. § 21.2801 et seq.) that were not pled in their counterclaim.[3]  Defendants do not address the Texas Insurance Code provisions cited in their counterclaim in their response brief.[4]

As defendants have not set forth issues of material fact regarding (1) the representations made by FMH or the plaintiff Fund or (2) defendants' reliance on the representations made, the Court finds that plaintiff/counter-defendant's motion for summary judgment (Doc. No. 63) should be GRANTED.  Defendants' counterclaims are DISMISSED.

### III. Third-Party Defendant's Motion for Summary Judgment against Plaintiff/Third-Party Plaintiff (Doc. No. 55)

---

[2] Defendants state in their response brief that they have filed a motion for leave to amend their counterclaim to add ERISA claims, and that motion has not yet been ruled by the Court.  However, defendants' motion for leave to amend had been denied as untimely on March 23, 2007 (Doc. No. 94), a full week before defendants filed this response brief (Doc. No. 98, filed on March 30, 2007).  Defendants do not have any further motions pending at this time regarding seeking leave to amend to add ERISA claims.

[3] As noted by plaintiff/counterclaim defendant in its reply, a party cannot amend its pleadings through its response to a motion for summary judgment.  See Rodgers v. City of Des Moines, 435 F.3d 904, 909 (8th Cir. 2006); Northern States Power Co. v. Federal Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004).

[4] Defendants also spend approximately three pages discussing how FMH was the agent of the Fund.  However, agency of FMH does not appear to be contested by plaintiff for purposes of summary judgment; instead, plaintiff's argument is that neither it nor FMH made any misrepresentations upon which defendants relied.  Although defendants argue generally that FMH made certain representations to them and plaintiff ought to be responsible for those statements, defendants do not explain how those representations were false or misleading, nor do defendants demonstrate that they relied on any representations made by FMH.

11

**Third-party defendant states it is entitled to summary judgment in that there is no evidence that third-party defendant committed any actionable conduct or made any misrepresentations to the Hospitals. As plaintiff/counterclaim defendant's motion for summary judgment (Doc. No. 63) has been granted, third-party defendant's motion for summary judgment must be granted as well, as in such a situation FMH could not be found liable on plaintiff's third-party complaint for indemnification. Therefore, third-party defendant's motion for summary judgment (Doc. No. 55) is GRANTED and the third-party plaintiff's claim for indemnity is DISMISSED.**

**To the extent that third-party defendant seeks attorneys' fees pursuant to the Administration Agreement, third-party defendant shall submit its briefs regarding its attorneys' fees pursuant to the deadlines established by Fed. R. Civ. P. 54(d)(2) and 58(c). Plaintiff/third-party plaintiff indicated in its response that, if third-party defendant's motion for summary judgment was successful, plaintiff/third-party plaintiff would request leave of court to file a motion against defendants pursuant to Fed. R. Civ. P. 11 seeking recovery of both its and third-party defendant's attorneys' fees. The Court notes that plaintiff may file any Rule 11 motion it believes is proper; however, the Court will not grant same unless plaintiff has fully complied with Rule 11(c)(1)(A).**

**IV.   Third-party Defendant's Objections to and Motion to Strike Defendants' Witnesses (Doc. No. 89) and Third-Party Defendant's Objections to and Motion to Strike Plaintiff's Witnesses (Doc. No. 90)**

**Third-party defendant moves to strike three of plaintiff's witnesses and several of the witnesses named in defendant hospitals' witness list. However, as all claims against third-party defendant FMH have now been dismissed, the Court finds the pending motions (Doc. Nos. 89 and 90) should be DENIED AS MOOT.**

**V.     Defendants' Motion for Continuance and Request for Oral Hearing (Doc. No. 93)**

In response to third-party defendant's motion to strike witnesses (Doc. No. 89), defendants requested a four to six month continuance of the trial setting of this matter, and further requested an oral hearing on their motion for continuance and the motion to strike their witnesses.  The Court DENIES defendants' request for an oral hearing on these motions, and further DENIES defendants' motion for continuance of the trial setting (Doc. No. 93).

**VI.    Remaining Issues for Trial**

Given that the only remaining claims in this case are those listed in plaintiff's complaint for declaratory judgment, and the only parties remaining in this case are plaintiff and the hospital defendants, the Court believes that the trial of this matter can be <u>substantially</u> shortened from the expectations of the parties as revealed in their respective pre-trial filings.  The only questions remaining are (1) whether plaintiff's decision to deny benefits under the felony exclusion in the plan was an abuse of discretion or arbitrary and capricious; and (2) whether defendant Sullins (or others) failed to appeal plaintiff's decision, making plaintiff's decision final and binding on all parties.  The majority of the answers to these questions ought to be found in the Plan Administrator's record of its claim denial decision.  Thus, beyond the record below, there ought not be a great need for additional witnesses[5] in order for the remaining parties to present their claims and/or defenses.

Therefore, with the above limitations in mind, the Court ORDERS plaintiff to provide a revised witness list, exhibit list, in camera witness list, and deposition

---

[5] Additionally, although the Court has denied as moot FMH's motions to strike certain witnesses, the Court notes that several of the identified witnesses (such as Officers Baimbridge and Ruland) appear to be beyond the Court's subpoena power.

13

**designations on or before May 15, 2007, at NOON. Defendants shall submit their revised witness list, exhibit list, in camera witness list, deposition designations, and any objections to plaintiff's deposition designations on or before May 21, 2007, at NOON.**

**VII.  Conclusion**

    **Therefore, for the foregoing reasons:**

- **(1) Plaintiff's Motion for Summary Judgment on Counterclaim of Defendants Memorial Hermann Hospital System and Hermann Continuing Care Hospital (Doc. No. 63) is GRANTED;**

- **(2) Third-Party Defendant's Motion for Summary Judgment Against Plaintiff/Third-Party Plaintiff (Doc. No. 55) is GRANTED;**

- **(3) Third-Party Defendant's Objections to and Motion to Strike Defendants' Witnesses (Doc. No. 89) is DENIED AS MOOT;**

- **(4) Third-Party Defendant's Objections to and Motion to Strike Plaintiff's Witnesses (Doc. No. 90) is DENIED AS MOOT;**

- **(5) Defendants' Motion to Continue (Doc. No. 93) is DENIED;**

- **(6) Defendants' Motion for Extension of Time to File Response to Plaintiff's Motion for Summary Judgment (Doc. No. 106) is GRANTED; and**

- **(7) The remaining parties shall submit revised pre-trial documents in accordance with the schedule detailed at page 13 of this Order.**

    **IT IS SO ORDERED.**

**Date: 5/9/07**                                       **S/ FERNANDO J. GAITAN, JR.**
**Kansas City, Missouri**                   **Fernando J. Gaitan, Jr.**
                                                                              **Chief United States District Judge**